Thank you, Judge Rawlinson, and thank you to the law school for hosting this argument. I'd like to reserve five minutes for rebuttal, if I'm able to. Counsel, please be reminded that the time shown is your total time remaining. Okay, understood. Thank you, Your Honor. May it please the Court, Andrew Birney on behalf of the United States. The remand order in this case is fundamentally flawed in two respects. First, the District Court erred in remanding this case without deciding the United States' sovereign immunity defense. And second, the United States is immune from this suit because it exceeds the McCarran Amendment's limited waiver of sovereign immunity for administration of previously decreed water rights in a comprehensive state court adjudication. Counsel, could you speak a little more slowly, please? Certainly. I try to compensate for that, Your Honor. I guess not enough, but I will slow down. But turning to that first issue, the District Court's failure to decide the sovereign immunity defense, a federal court in a removed case must decide a sovereign immunity defense before remanding a case to state court. And if the United States has not waived its sovereign immunity suit in state court, must dismiss that case rather than remand it. That is clear from this Court's decisions in Cox and in Rialco County Grand Jury. It is clear from the 1996 amendments to Section 1442 and its legislative history, which gave federal agencies the power to remove. As the D.C. Circuit explained in the Hammer case, which we cite in our briefs, one of the principal purposes of those amendments was to prevent the United States from having to litigate federal sovereign immunity defenses before potentially hostile state courts. The remand order in this case runs afoul of that principle. But there are cases where state courts have decided sovereign immunity issues, correct? That's correct, Your Honor. If they are in that respect, ultimately there is review in the United States Supreme Court. That's correct. We don't dispute that we would have review of that question, but we think it's clear both from this Court's decisions and from the legislative history that in a removed case, Congress intended federal courts to decide that issue. I think this Court's decision in Cox is particularly instructive in that. I think this Court's decision in Cox is particularly instructive in that regard. I mean, in that case, the district court had remanded the case and the United States appealed on that issue, and this Court specifically held in a published decision that because the United States was immune from the action in state court, the district court erred in declining to dismiss it. Now, plaintiffs have two responses to this, which respectively we don't think either of them is persuasive. First, plaintiffs argue that the district court correctly declined to decide the immunity question because the United States waived its immunity in the McCarran Amendment in the Parks Enabling Act. First of all, we think that's wrong on the merits, but more importantly, it's also circular. At most, as we point out in our second brief, that would be an argument for deciding the McCarran Amendment issue against the United States if the Court agreed. It's not an argument for leaving that question to the state court. Plaintiffs— Let me jump in there. If we were to conclude that the McCarran Amendment did waive immunity here and affirm on that ground, is this case over as far as you're concerned? No. I mean, if this Court were to rule that the district court erred in not deciding immunity but decide the immunity question itself as we've urged it to and decided against the United States, I think the case would go forward in the state court. We don't dispute, per this Court's decision in TMOAC, that if a case is properly for administration of a state court decree that the United States has waived its immunity for, that a state court has exclusive jurisdiction to administer its decree, just as a federal court has exclusive jurisdiction to administer its decree. Our point, though, is that this federal sovereign immunity defense, which goes to the question which is a question of federal law, which goes to the question of whether the state court has jurisdiction to begin with, is not for the state court to decide just because plaintiffs have purported to bring a claim under a decree. Fair enough. But if this panel were to decide, we agree with you to that point, but we've looked at the McCarran issue and we believe that it does apply here and, in fact, it has been waived under the TMOAC case, what happens to this appeal? I mean, if this Court, I think we've asked the Court to address the sovereign immunity question in the first instance, so if the Court were to, fair enough, the Court were to decide that issue against us, then yes, I think it could affirm the, I don't know what the precise disposition would be, but the ultimate result would be affirmance of the remand order. Right, and that's why I was asking you, because I agree it's confusing as to procedurally where we would be. But if we were to, so if we were to do that, tell us why we shouldn't do that. Okay, so I'll turn to the, I'll turn to the sovereign immunity, I'll turn to the substance of the sovereign immunity issue itself. Although styled as a claim for administration of previously decreed water rights, this case does not fall within the McCarran Amendment for two fundamental reasons. First of all, plaintiffs, at its core, if you look at plaintiff's complaint, their motion for remand, their declaration, what they challenge are land management decisions that are not properly characterized in any respect as administration of decreed water rights. I mean, their complaint, their motion for remand, complains about decades of unnatural fire suppression activity, which they claim have altered the vegetation and the landscape to change conditions beyond that in 1932. They seek a right to access park lands to perform unauthorized work without seeking a federal permit. They attack other federal decisions, such as the felling of trees, alleged activities with respect to invasive growth of insects, extinguishing of naturally occurring fires. This is all on, in addition to the complaint itself, I think on pages 45 to 46 of their principal brief. I don't think that when Congress waived the United States sovereign immunity for administration of previously decreed water rights, it anticipated this sort of state, open-ended state court oversight of the United States land management decisions. And it's the state court oversight, by the way, that I think is important. Our claim is not that plaintiffs, that the Park Service is above the law or that plaintiffs have no remedy. They may have other causes of action under federal law. But in addition, to the extent their complaints, which I think are principally about failing to clear debris from the stream channel, they could apply for a federal permit from the Park Service, which they did not do before they filed the complaint and still have not done. If that permit were denied or if there were conditions that they were dissatisfied with, they could presumably challenge that decision under the APA. But, counsel, would you address the doctrine of prior exclusive jurisdiction and whether that doctrine trumps what you just said in terms of what could be done? No. No, Your Honor. The prior exclusive jurisdiction in this court's decisions in TMOA stands for, it stands for the proposition that federal courts do not have concurrent jurisdiction to administer state court decrees and vice versa. So in the TMOA case, there was no claim of sovereign immunity. The allegations in that case weren't even against the United States directly. They concerned land that the United States had acquired on behalf of a tribe and the tribe's activities. And those claims were clearly for administration of those previously decreed rights. The tribe in that case, in addition to declining to pay fees subject to that decree, had passed resolutions saying the river was not subject to state court jurisdiction, had handcuffed the water commissioner and refused him access to their lands to administer the decree. So there was no dispute in that case that the case was within the state court's jurisdiction. The argument of the United States in that case, which this court rejected, was, yes, it's within the jurisdiction of the state court, but the federal court can address it, too. This court rejected that argument, which were, of course, not challenging in this case. But that doesn't speak to the question, first of all, about whether a federal court must decide a sovereign immunity defense when raised and to Judge Owen's question whether this particular case falls within the McCarran Amendment, which we would say it does not. And just to finish up my point, we're not, so plaintiffs could see, you know, the state court, if you look at page 15 of attachment C to the request for judicial notice, the state court acknowledged that there is a standing park order that acknowledges that certain parties might have water rights to divert water from inside the park to outside the permit. Counsel, I'm sorry to interrupt, but you talk very fast. It was, I'm sorry. We asked the parties to come to court prepared to discuss mediation. In my view, there be draconian results regardless of which side we decide for. So if we decide that you don't have sovereign immunity, that means that the state court will be able to dictate what procedures can be performed on federal land. And if we decide there is sovereign immunity, then the plaintiffs will have no recourse. So to me, this seems like a perfect case for the parties to try to resolve themselves rather than us making one of those solutions that's going to be very harmful to one party. So what is your view on mediation? Yes, I would be happy to address that, Your Honor, if I could. I just respectfully push back a little bit on the notion they have no recourse. If you ruled our favor, that was the question I was just trying to address. I know I was talking fast, but on the question, on the question of whether we would be open to mediation, I mean, the short answer, which I'm happy to develop further, is yes, but with caveats. I mean, I share your view that apparently motivated this order, that this seems like the sort of dispute that we ought to be able to resolve without judicial resolution. That said, and I don't know if the court is aware of this or not, but we have invested substantial time and energy to trying to resolve this. I don't want to speak for plaintiffs, including through this court's mediation office. I don't want to speak for plaintiffs or disclose those internal discussions. But I think the impasse, at least in the past, was that they would really like the option to seek resolution through the state court for future disputes like this one. And we don't agree with that for all the merits reasons in this appeal. And also, we don't think we can prospectively agree to that sort of waive this sovereign immunity of the United States as part of a settlement agreement. That, having said that, we're willing to try again. I guess the only thing I would say is that I think plaintiffs would, at the very least, and I don't know if they would be amenable to this or not, you could ask Ms. Leonard, they would have to, I think, agree to at the very least stay the state court, or seek to stay the state court litigation, which is to the extent we were seeking delay of this federal court appeal while the mediation process was ongoing. And the state court would have to grant that motion to stay. And I think also they would have to forbear from some of the more, we would say, the most recent state court order that we brought to attention from August, where the state court really contemplates allowing them to use motorized tools, including chainsaws on federal land, and allows them in certain cases to proceed even with non-routine work without the Park Service's approval, and without even judicial approval if the court hasn't ruled on any disputes within 30 days. So I think we would want some sort of pause to maintain the status quo. And that's a very long-winded answer. So back to my original point, yes, I think we would be open to that, but at least with some variant of those caveats. But I mean, so just turning to the sovereign immunity issue, I mean, we don't think that the relief plaintiffs seek, and I think you can see the breadth of it. I would call the court's attention to, I think, ER 48, which is the portion of the complaint where they talk about the unnatural fire suppression activities. SCR 608 to 610, where they talk at length about their remand motion, about their dissatisfaction with the park's land management decisions, as well as their brief on pages 45 to 46. I think what they're talking about here are land management activities that are not within, fairly within the scope of the McCarran Amendment. And even if they were, and even if there were ambiguity on that point, I would say that that should be resolved by the two canons that we cite in our brief. First, the principle that sovereign immunity waivers are construed narrowly in favor of the sovereign. And second, that states generally have no authority to regulate the operations of the federal government, certainly the federal government on federal lands like national parks, absent explicit congressional authorization. Okay, counsel, that's generally true, but let me go back to my question. Does the prior exclusive jurisdiction doctrine trump what you just said? No, Your Honor. I mean, so first of all, even plaintiffs, as I understand their argument, don't say that the prior exclusive jurisdiction doctrine resolves the question of whether sovereign immunity bars this appeal. Prior exclusive jurisdiction concerns what issues are left to the state court versus the federal court to decide. And our point on the prior exclusive jurisdiction doctrine, which I don't think goes to the merits of sovereign immunity. I think that goes to the question about what is for the state court versus the federal court to decide. We don't dispute, to go back to Judge Owen's question, that if this court were to conclude that the United States has waived sovereign immunity from this suit, we hope you don't reach that conclusion, but we don't dispute that if the court reaches that conclusion, that this is properly an action for administration of a decree, then yes, the merits of that would be for the state court to decide. But neither TMOA nor the prior exclusive jurisdiction doctrine means that in a removed case, a federal sovereign immunity defense cannot be, should not be resolved by a federal court. If that's what it did mean, it proves too much, because if that's what it did mean, it would mean that any time a plaintiff brought a claim that on its face purported to be a claim for administration of a state court decree, that would deprive the federal court of authority and the United States of its usual rights to have, which Congress clearly intended the United States to have, to have a federal court resolve the immunity claim. I say I'm treading into my rebuttal time a little bit. I would just briefly say, I would just briefly make two points. First of all, to the extent this was administration of water rights or these land management activities were of the sort that a water right would be required, the United States, those provisions of the decree can't be enforced against the United States because the United States was not a party to that decree. We think the case law of this court, which TMOA did not purport to overrule or limit, it was a case limited to its unique facts, does not change that. And also, I would just call the court's attention, I think Judge Rawlinson alluded to this, that there are very real on the ground implications of this for the Park Service that just, since the remand, that just show the extraordinary intrusion on federal sovereignty here. The state court has issued an order holding the United States in contempt in allowing plaintiffs access to park lands to perform unauthorized work without seeking a permit. We were not, the Nevada Supreme Court did not allow us to appeal that. And this latest order, as we profiled, is even more onerous. And essentially what the state court seems to contemplate is open-ended supervision of the federal government's operations on a national park. The judge is ordering submission of proposed action plans at least annually. We don't think that sort of supervision is contemplated by the McCarran Amendment. We would ask this court to reverse the remand order and direct the district court to recall that order and dismiss this action as barred by sovereign immunity. I'll reserve the remainder of my time. Thank you, counsel. Good morning, your honors. May it please the court. Excuse me. My name is Debbie Leonard on behalf of the plaintiffs and I want to start actually by addressing Judge Rawlinson's question about settlement because I know it's important to the court. The plaintiffs have always been committed to trying to resolve this case. We have engaged in considerable settlement discussions. We continue to do so and we agree with your honor that a ruling against the plaintiffs would be absolutely draconian. They would be left without a remedy. On the other hand, I disagree that it would be draconian for the government should the plaintiffs prevail and I will explain that in my remarks. The Park Service avails itself of the benefits and protections of the state court decree and acknowledges the decree's finality under state law, but it wants to be free to violate the decree without any consequences and to the detriment of other water users. This is antithetical to the enabling legislation of Great Basin National Park. It is contrary to the plain language of the McCarran Amendment and the purpose behind the McCarran Amendment and it intrudes upon the state court's prior exclusive jurisdiction. Counsel, the prior exclusive jurisdiction is to administer water rights. Do you agree? The prior exclusive jurisdiction is over the race of the water rights, the property, and that the state court took prior exclusive jurisdiction in 1934 when it administered and issued the decree. The race is the water, the water that flows through those creeks. The race is the water, correct. And the jurisdiction is to administer the water rights. Did you agree? Administer and enforce its decree. Right. And so the thing that concerns me the most is the scope of the scope that the state court has taken in terms of administering the decree. Generally, the cases we have that administer water rights talk about who has prior rights, if the flow is going directly, but the self-help part of it has not generally been part of the administration of water rights. Do you have a case that you can cite us to that goes so far as to allow self-help in the process of administering water rights? The case that, Your Honor, I would reference is Ennor, E-N-N-O-R, versus Rain, R-A-I-N-E. It's cited in our briefs. It is a Nevada Supreme Court case that specifically allowed a downstream senior prior appropriator to exercise self-help remedies upstream on a creek when the junior appropriator, who was also the riparian owner, was interfering with the flow of the creek. What's the nature of the self-help in that case? In that case, the riparian junior appropriator had installed obstructions to the flow to divert water onto the upstream lands, and the downstream senior appropriator went and removed those obstructions. And I think, I'm not sure who brought suit, but my guess is it's the junior appropriator who then brought suit for trespass. So I want to start because I think, or I want to turn because I think it's very important to the unique language of the Great Basin National Park Act because the defendants don't even talk about it, and I think it's critically important to this case, and it independently binds the defendants to the state court's jurisdiction. And it undermines the defendant's contention that somehow this case has wide-ranging applications for national parks because the statutory language is very unique and it's very specific to this park. So let me just turn to that briefly. Congress didn't establish the Great Basin National Park until 1986, and it was after 60 years of failed efforts. The reason those efforts had been unsuccessful is because local stakeholders, including ranchers and farmers, had objected. They did not want to change from the multiple-use management policies of the Forest Service to a national park, and they claimed that it would jeopardize their water rights, which date back to 1869. The enabling legislation that Congress ultimately passed contained numerous concessions in favor of the ranchers and farmers. And even the Secretary of the Interior at the time characterized the act as a, quote, balanced proposal that is sensitive to the needs of the people who have traditionally used the area. These concessions are apparent in the statutory language. First, withdrawal of the lands was made subject to valid existing rights, and the Secretary of the Interior was prohibited from acquiring lands or interests in land without the consent of the owner. But critically for our purposes here, and I really want to emphasize this for the court how unique this language is, Congress expressly did not create a new Federal Reserve right. Rather, the Congress relegated the park to whatever Federal Reserve right might have been associated with withdrawal of lands for Humboldt National Forest and Lehman Caves National Monument, which occurred in 1909 and 1922, respectively. So in other words, the problem for the park is that the reserve rights post-date any of the state appropriative rights. And pursuant to the U.S. Supreme Court case in United States versus New Mexico, they can't be used for recreation or administrative purposes, such as campgrounds or visitor services. So essentially, they offer very little value to the park for what it needs water to accomplish. And so it's important to keep in mind that nothing about this case implicates Federal Reserve rights. Whatever claims the government might have to Federal Reserve rights will still exist after this case is decided by the state court. And although my colleague didn't raise it at oral argument, he uses the word forfeiture in the briefing and that there's nothing that would even affect the Federal, any claims to Federal Reserve rights, much less affect a forfeiture of them. But this brings me to the next critical portion of the enabling legislation, and I'm quoting here. It says, no provision of this subchapter shall be construed as authorizing the appropriation of water, except in accordance with the substantive and procedural law of the state of Nevada. So this goes to Judge Rawlinson's question about the self-help Nevada allows, as I mentioned from the Ener versus Rain case, allows downstream appropriators to make sure the channel stays clear. It also has a comprehensive water statute that was passed in 1913 that created a process to adjudicate rights. And there's no dispute that all of the, in this, with regard to Baker and Lehman Creeks, all statutory requirements were met. It was a comprehensive adjudication and the decree was issued. Counsel, the Enor case was decided in 1903. Have any cases since then endorsed the option of self-help? I am not aware of any in Nevada or any Federal cases in particular, but I would point the court, and I want to talk about it, so this might be a good place to turn to the actual language of the decree. And keep in mind that the government has since acquired water rights that were adjudicated and decided in the final decree. And so the government is, and it doesn't dispute that it is a successor and interest to the party, to the decree. So the decree provides that unless otherwise allowed under the decree, each and every water user and their successors and interests are perpetually enjoined and restrained from at any time diverting or using or preventing or obstructing the flow in whole or in part in or along its natural channel. And this goes to your Honor's self-help question. Here's another provision of the decree, says each water user must keep his ditches as well as the mainstream channel through his land reasonably clean of weeds, vegetation, and deposits of silt, and in all other respects, maintain said ditches and channels in a manner conducive to minimum loss of conveyed water by seepage, evaporation, and other causes. So it puts the onus on the upstream landowner to clear the debris. Right. And if the court had held them in contempt of court and told them to do that, in my view, that would be administering the water rights. But the self-help part of it troubles me because I'm not sure that there is precedent to say that that's actually the administration of water rights. Well, your Honor, I have two responses to that. One is that the enabling legislation makes it so state law applies and the Enner case makes it clear that under Nevada state law, and I would submit that the date of the case actually makes the case stronger in our favor because it shows that this is how it's when the, you know, it's closer in time to when prior appropriation was first established, and it says this is how we interpret the prior. You could also say it's an outlier because it hasn't been followed in the over 100 years that it's been on the books. I would disagree, Your Honor, that it hasn't been followed. I think that appropriators follow it. The self-help part hasn't been followed. I would disagree with that, Your Honor, too. I don't think that there's any point to- Well, what other case says that the senior owner can use self-help to clear obstructions? Your Honor, I would submit that the absence of another subsequent case doesn't mean that the issuance of that case and the fact that that is a law that has been followed doesn't, the absence of a newer case, I do not think undermines the applicability of the earlier case or the fact that that's what appropriators do. They go and they clean out ditches, and they go and clean out streams in order to ensure the flow there. I mean, in the Western United States, people, that's a common occurrence. So the absence of a case I don't think makes a- Even of the objection of the landowner whose property they enter? Well, the conveyance creates a, the conveyance of water to the point of diversion creates the right to do that. So, Your Honor, this is, this is the law of the state of Nevada, and that is, and it's part of the doctrine of prior appropriation. But I want, and I hear that Your Honor is troubled by it, and I, while I don't think that the subsequent actions of the state court should dictate the decision that the court makes today, because I think that decision, and any, to the extent any federal rights are implicated or affected or harmed by something that the state court might do, that doesn't alter its prior exclusive jurisdiction. It just goes to the fact that the government needs to wait until it can petition for cert to the U.S. Supreme Court to have any of those be remedied. And that is the case of Eagle County. The U.S. Supreme Court case is very clearly on point that that's the remedy. If there's an issue with the state court going too far, there's oversight from the U.S. Supreme Court. Counsel, the decree you were reading from was, is dated what year? 1934. Okay, the government's response is that because the McCarran Amendment didn't take effect until 1952, it didn't participate at that time. It didn't need to participate because it had sovereign immunity. Would you respond? Yes, Your Honor. So, two things for that. First, what we're looking at with the McCarran Amendment is subsection A2 regarding administration. So we don't dispute that the government chose not to participate in the initial adjudication. However, the government does not dispute that all of the statutory requirements were followed, and it also characterizes that decree as a final decree. And so the McCarran Amendment subsection A2 is designed for this exact circumstance in which the government subsequently acquires rights under state law, and the use of the present tense in the subsection 2, that the government is the current owner of the water right, is what makes this come within the ambit of the McCarran Amendment. So the government's failure to participate, lack of participation, and the fact that the McCarran Amendment postdates the decree, it doesn't, it's irrelevant because subsection 2 of the McCarran Amendment or subsection A2 addresses this precise situation. And then on another topic, I've been asking your opposing counsel about prior exclusive jurisdiction. His response seems to be, we have to address sovereign immunity first before we get to that. What's your response to that? I would disagree with that, and I think it represents a fundamental misunderstanding of in-rem jurisdiction. And I actually would point the court to a case that just came out, and I just came upon it when I was preparing, Petro-Saudi, the case from this court, that draws this distinction between in-rem jurisdiction and the over the thing, over the water, and any issue regarding getting jurisdiction, essentially in-personam jurisdiction, or dealing with immunity questions. And it clearly states that in-rem jurisdiction attaches first, and that's what you follow, and subsequent questions of whether it can be enforced, the decree can be enforced against certain people is a separate question, but it doesn't change the fact that the state court's jurisdiction over the race attached in 1934. So, counsel, let's say we were to disagree with you and agree with the government that sovereign immunity applies. This is just an assumption. How would you then, in representing your clients, how would you then attack or try to challenge your ability to use the land? Would it be through the APA? How would you do it? Your Honor, I do not think we would have any remedy to... The APA, you would need a specific action, right? So, in 2012, the plaintiffs had been going... Plaintiffs and their predecessors had been going out and cleaning the creek for, you know, since they'd started appropriating the water in 1860s. In 2012 was when the Park Service first detained them, threatened them with law enforcement action, and said, you can't... And then in 2014, a subsequent superintendent said, you can't do this anymore. So, what our statute of limitations have run under the APA, and this... But it's also... It's not a federal cause of action. We are suing under a state decree, and the enabling legislation made our... Made the government subject to Nevada state law. And so, we have a right to enforce... This is precisely why the McCarran Amendment was passed, is to be able to enforce a decree against the government once it has acquired water rights under state law. But you can't think of an alternative... I'm not holding you to this. Tomorrow, you realize one. Fair enough. But as of right now, you don't have a plan B, essentially. I don't think our... I think my clients would be left without a remedy. I think that that would be a situation that completely goes against the intent of Congress and the enabling legislation and the McCarran Amendment. And I think if the government wins, that means that no one can keep the Park Service accountable for violations of the decree. Because it's not saying keep it in federal court. It's saying that the federal court doesn't have jurisdiction either because of sovereign immunity. So, nobody, no court, state or federal, and there's no other options, are going to be able to keep it accountable for violations of the decree. And so, would you object to a remand to the district court to address the sovereign immunity issue? I would object on the basis that the federal court doesn't have jurisdiction to even decide the sovereign immunity issue. What case says that a federal court in a removed case does not have jurisdiction to decide sovereign immunity? I would say the cases with regard to prior exclusive jurisdiction... Those don't address sovereign immunity. Well, there are subsequent cases, and I referenced the Petro-Saudi case. What's the strongest case for the argument that in a removed case in federal court, the federal court does not have jurisdiction to decide the sovereign immunity of the federal government? I think the Eagle County case. I think also you need to go to the language of the removal statute. Well, I'm asking you for a case. I was just asking you for a case that has interpreted that statute to say that the federal district court does not have jurisdiction to determine sovereign immunity. I think the Eagle County case is probably the closest case, if I'm remembering correctly, but I want to go to the point that the language of Section 1442 does not give the federal government the right to remove, to have a federal court determine sovereign immunity, but it, and the, what the plaintiffs cite, excuse me, what the government cites is legislative, one Senate report from the legislative history, it cites cases that have nothing to do with interim jurisdiction. And so I would say that the, any case, and actually I would point the court to the Petro-Saudi case regarding the attachment of the jurisdiction to the thing, to the water prevails first, and then any questions regarding sovereign immunity are then decided by the court that has the interim jurisdiction. Counsel, did you cite the Eagle County case in your brief? Yes, Your Honor. And do you think this panel has jurisdiction to decide the sovereign immunity question? Your Honor, to the extent the court is exercising appellate jurisdiction, yes, I think the court can, as a matter of de novo review, could decide that issue and it would decide the case in our favor. So if we have jurisdiction to decide that issue, I don't understand why you say the federal district court would not have jurisdiction over that. Well, Your Honor, you're engaging in de novo review if you were gonna decide the, I think you make a good point, actually, that I, to the extent that you decide that the state court has prior exclusive jurisdiction, then this court would not have jurisdiction to decide. So you're saying the federal district court didn't have jurisdiction to make that ruling and neither do we. That's your argument? Yes, Your Honor. All right, thank you. I see that I'm out of time. I just wanna finish with a few key points. Well, you didn't address your counter point, I mean, your cross appeal at all. Your Honor, I think the question with regard to fees, our position is that there was no objectively reasonable basis for removal because Timok tribe is directly on point. In Timok, like here, there was a comprehensive adjudication under state law and a final decree was issued. Like here, the United States acquired rights under the decree. Like here, the United States violated the decree. Like here, contempt proceedings were initiated. And like here, the U.S. removed pursuant to section 1442. So we believe there was no objectively reasonable basis for removal and we should have gotten our fees. If I can just make one last point, is that allowing the Park Service to skirt the state court's jurisdiction is precisely the ill that the McCarran Amendment rectified and the Enabling Act sought to prevent. And if you rule for the Park Service, it means that no one can keep the Park Service from violating the decree. All right, counsel, thank you. Thank you, Your Honors. Your bottle. Thank you, Your Honor, just a few points. On this lack of a remedy argument, we just fundamentally disagree with that as I think I mentioned in my opening presentation. We think plaintiffs could apply for a permit to engage in the debris-clearing activity if that permit were denied or if reasonable conditions were attached. I'm a government lawyer. I don't want to preclude in advance any possible threshold defenses we would have, but I don't see no reason that couldn't be challenged as unreasonable under the APA in federal court. We've raised this in the state court, so I do think they have that as a remedy at the very least. Judge Rawlinson, to your question, I'm not aware of any case, at least since agencies were given the power to remove in 1996 that have held that a sovereign immunity defense is a matter for a state court in a case that was otherwise properly removed. Ms. Leonard mentioned Inree Eagle County. That's a case from the 1970s. I believe that was a case where the Supreme Court held that sovereign immunity had been waived and that any further, I could be wrong, but further proceedings in the state court, the state court could entertain what was proper within the McCarran Amendment. I don't think that case stands at all for the proposition that this is not, that a federal court in a properly removed case doesn't decide sovereign immunity. Congress clearly intended sovereign immunity defenses to be decided by federal courts. The fact that a plaintiff invokes a decree case, states that it's within the prior exclusive jurisdiction, it just begs the question, whether it's within the prior exclusive jurisdiction of the state court depends on whether the state court has jurisdiction over the claim under the McCarran Amendment. I just want to briefly address Judge Fitzwater's question in the language from the decree Ms. Leonard cited. It's true that the Park Service acquired to after acquired water rights, we don't dispute, at least for purposes of this case, that the state court, that there is authority to administer those claims in the sense that the Park Service is bound by the priority of use, that it can't use water in excess of the decreed limits. It has to use it for its stated purposes, but that's quite different in this case, where the allegations don't have anything to do with the decreed water rights, and these other matters Ms. Leonard cites in the decree were not matters the United States had any opportunity to contest in the decree proceedings. To say that we submitted to all of this just by acquiring water rights, even for pre-McCarran Amendment adjudications, I think runs afoul of the principle that sovereign immunity is a question of Congress and can't just be waived by executive branch action alone. I just want to briefly address the Great Basin National Park Enabling Act. Respectfully to my colleague on the other side, I just don't think that that's relevant to this case. That act says that the reservation of the park does not create any new water rights. We've never disputed that, but the park retains its water rights associated with the creation of the national forest. It doesn't waive immunity or use any language of waiver of immunity with respect to matters that are not within the scope of the McCarran Amendment or for adjudications as to which the United States was not a party. Just to briefly address, I see I'm out of time, but just to briefly address Judge Rawlinson the question about NRV rain. I think the facts of that case are markedly different. It involved, I believe, a dam in which water was being expressly diverted for beneficial use. As you mentioned, that case has never been, has not been applied since, as best we can tell. It also predated the Nevada, the state engineer system in Nevada. Now, that's, of course, a question of state law, Your Honor, but I think the state law backdrop is important for interpreting what administration means for purposes of the McCarran Amendment. I don't, I think the Congress that enacted the McCarran Amendment would have been, you know, quite surprised to learn that by this limited waiver for administration of decreed rights, it was authorizing this sort of open-ended state court interference with things like fire suppression activities, felling of trees, whenever there's some claim that it has some incidental impact on decreed rights. This case does not fall within the waiver of immunity under the McCarran Amendment. We would ask the court to reverse the remand order and remand with instructions for dismiss. I think all of my remarks about our main appeal encompasses why our position was at least objectively reasonable for purposes of Ms. Leonard's cross appeal under Martin v. Franklin. But if there's nothing else, I thank the court. It appears not. Thank you, counsel. Thank you to both counsel for your helpful arguments in this challenging case. The case just argued is submitted for decision by the court.
judges: RAWLINSON, OWENS, Fitzwater